# Constitutionality of Line-Item Veto Proposal

A bill that purports to give the President a line-item veto by providing that each item of appropriation in an appropriation bill be enrolled, although not voted on, as a separate bill raises serious constitutional questions under Article I, § 7, cl. 2 of the Constitution.

February 1, 1985

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This Office has reviewed a copy of S. 43, a bill that seeks to provide the President with effective line-item veto authority by requiring that each item of appropriation in any appropriation bill be enrolled as a separate bill. This procedure would permit the President to veto any of these separate bills and, therefore, give him the power effectively to veto individual items of appropriation. We commented on a similar proposal pending before Congress last fall that was never adopted. At that time, we set forth a number of general objections to the proposal as well as several specific comments concerning the particular language of that draft. The new bill has been revised to answer most of our technical objections, but it is still subject to the general concerns that we noted previously.

The first major concern we noted with respect to this type of proposal is that its constitutionality is a matter of substantial question. Although we have not had the time to develop a detailed constitutional analysis of this issue, we have set forth below the basic outlines of the constitutional question and the arguments that might be developed for and against the constitutionality of the proposal. The most we can say is that it is a close question, the outcome of which cannot be predicted with any reasonable degree of certainty.

The constitutional issue arises from the traditional construction of the provisions in the Constitution governing the veto power of the President. Article I, § 7, cl. 2, states in pertinent part:

> Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal and proceed to reconsider it.

28

The veto clause seems to give the President only two options: he may either sign the bill or return it with his objections. Thus, on its face, the language of the Constitution does not seem to permit the President to veto individual parts of a bill.

This conclusion is confirmed by the actual practice of Presidents under the veto clause. No President has ever attempted to exercise an item veto. To the contrary, many Presidents have expressly considered the question and concluded that the President is without item veto power. In 1793, George Washington stated that he had signed many bills with which his judgment was at variance, but felt compelled to do so because "from the nature of the Constitution, I must approve all the parts of a Bill, or reject it in toto." 33 *Writings of George Washington* 96 (1940). President Grant, while urging the adoption of a constitutional amendment to authorize an item veto, recognized the absence of such a power under the Constitution. *See* 7 J. Richardson, *Messages and Papers of the President* 242 (1898). William Howard Taft stated simply that the President "has no power to veto parts of the bill and allow the rest to become a law. He must accept it or reject it." W. Taft, *Chief Magistrate* 14 (1916). This Department has consistently taken a similar position with respect to the meaning of the veto clause.

The bill attempts to avoid this constitutional obstacle to the line-item veto by requiring each item of appropriation contained in a single bill passed by both Houses of Congress to be enrolled as a separate bill. The President would then be able to veto any of these individual bills. The argument in favor of the constitutionality of this proposal begins with the proposition that the definition of the term "bill" is not fixed by the Constitution, but rather is subject to legislative definition by Congress. Congress has the authority, under its own rules, to prescribe what may and may not be included in particular types of bills. Similarly, Congress should be able to define that which constitutes a separate bill to be enrolled and presented to the President. This argument could certainly be developed further, and may ultimately prove to be persuasive.

Perhaps the best way to characterize this legislation from a constitutional perspective would be to state that Congress would take a single vote on a package of bills constituting the total appropriation.[1] The single vote would then simply be a convenient method for the adoption of multiple bills. At present, however, S. 43 does not read this way. Rather, it requires a bill to be split into several bills after Congress votes, but before presenting the package to the President. As explained in the following paragraphs, this differential treatment of a "bill" for congressional passage and presentment to the President may be incompatible with the requirements of Article I, § 7, cl. 2, which treats

---

[1] As far as we know, the current practice in Congress is to adopt each bill that is presented to the President by a separate vote. After a brief investigation, we have been unable to discover any general congressional practice of adopting separate bills together by a single vote. We understand that such a procedure may have taken place once, with respect to the adoption by the House of energy legislation in 1978, but we know of no other instances in which different bills were adopted by a single vote. In the limited time available, our research has failed to disclose any reported case involving the question whether Congress may constitutionally take a single vote on a package of several bills and thereafter present the bills separately to the President.

a bill the same with respect to congressional and Presidential action. We would recommend at the very least that the proposal be amended to embody the concept of a single vote on a series of bills.

Even if the bill is redrafted, however, we believe that there are very persuasive arguments that could be made against the constitutionality of the proposal. To the extent that we have been able to identify any policy underlying the "take-it-or-leave-it" principle of the veto clause, it seems to be that under the system of checks and balances established by the Constitution, the President has the right to approve or reject a piece of legislation, but not to rewrite it or change the bargain struck by Congress in adopting a particular bill. The fundamental principle established by the Constitution with respect to the adoption of legislation is that in order to enact a statute it is necessary (in the absence of a congressional override) to have the concurrence of the House, the Senate, and the President with respect to the statute as a whole. If the President were allowed to veto individual parts of legislation, then the bargain struck by Congress in adopting a bill could be altered. Indeed, the bargain might be altered so significantly that it would not receive the approval of a majority of both Houses. Thus, the veto clause ensures that the final compromise that is struck with respect to a particular statute is approved by the President and both Houses of Congress.

The proposed bill could be considered to be inconsistent with this constitutional principle because it permits the President to alter the bargain reached by Congress without the necessity for reapproval by both Houses. Individual items of appropriation would not be voted on separately, but rather would be voted on as a complete package. Therefore, it would be unclear whether each item of appropriation, or any combination thereof, would receive support of a majority of each House outside of the bill in which it was actually contained. Because each House would vote only once on the total package, the only manifestation of agreement expressed by each House would be an agreement with respect to the entire package. If the package is subsequently broken down into separate parts and the President is permitted to eliminate some of those parts from the final law, then the statute will not necessarily reflect the consent of each House of Congress. Thus, under this theory, the bill simply attempts to circumvent the requirements of the veto clause in a manner that is no more consistent with the policies of the veto clause than would be a direct legislative effort to give the President statutory line-item veto authority.

It is not a satisfactory answer to this constitutional argument to respond that Congress would have voluntarily imposed this limitation on itself and that Congress would be aware when it adopted an appropriations bill that the President would be able to veto individual parts of it. Congress made the same argument in the *Chadha* case with respect to the President's approval of legislative veto statutes, but the Supreme Court expressly stated that it was not permissible to alter by legislation the veto provisions of the Constitution. The Court stated: "Explicit and unambiguous provisions of the Constitution prescribe and define the respective functions of the Congress and of the Executive

30

in the legislative process. . . . These provisions of Art. I are integral parts of the constitutional design for the separation of powers." *INS* v. *Chadha*, 462 U.S. 919, 945–46 (1983). Thus, under this principle, Congress does not have the authority to alter the constitutionally prescribed method for the adoption of legislation, which requires the concurrence of the House, Senate, and President before a bill becomes law.

In addition to our constitutional concern, we have a concern with respect to the definition of the term "item." Both the old and new bills define an item as "any numbered section and any unnumbered paragraph" of an appropriations bill. The failure of the bill to define the term "item" other than by reference to the form in which an appropriations bill is organized could prove to be terribly cumbersome and might eventually lead to legislative manipulation and drafting techniques designed to subvert the purpose of the item veto legislation. For example, this proposal might well lead to the drafting of statutes without paragraphs or section numbers in order to prevent division of the bill into separate enrolled bills. As we previously noted, however foolish this may sound, we do not doubt that enterprising legislators would resort to any lawful drafting technique to avoid the Presidential authority created by these statutes. In addition, the Congress could dilute the effectiveness of the item veto power granted by the proposal by combining, in a single section, appropriations the President is known to favor with those to which he is opposed. As a practical matter, this type of problem will inhere in any legislation that seeks to require separate enrollment of individual appropriations. Nevertheless, we believe that an effort should be made to remedy this problem by redrafting the current proposal to restrict the definition of the term "item."

In conclusion, arguments can be made both for and against the constitutionality of S. 43. Given the importance of the line-item veto in the President's program, however, we would urge that strong consideration be given to the issue whether the benefits of S. 43 outweigh the substantial constitutional issues it raises and the uncertainty that would attach to any legislation enacted through the mechanism it creates. We are particularly strong in this recommendation given the ease with which the purpose of S. 43 could be subverted on any given appropriations measure. It may also be important to consider whether the President might be faulted for not utilizing effectively the power granted by this statute, when in fact its effectiveness was being undercut by Congress through clever construction of appropriations bills.

RALPH W. TARR
*Acting Assistant Attorney General*
*Office of Legal Counsel*

31